JOURDAN *et al. v.* ALBRITTON.[*]

(Division B.    March 14, 1926.)

[111 So. 591.    No. 26226.]

1. EVIDENCE. *Contract, signed by parties able to read and write, cannot be varied by parol evidence, though one may not have read it.*

Where a contract is reduced to writing and signed by the parties thereto, who are able to read and write, its terms cannot be varied by parol evidence, although one party may not have read same.

2. SALES. *Lessee of chattels, not exercising option to purchase within designated period, acquires no title except as lessee.*

Where a contract of lease is entered into by which chattels are leased for a period of years upon quarterly payments, and attached to said contract is an option to purchase which provides that the property leased might be purchased within a period of twelve months, and, if so purchased, the quarterly rent will be credited as part payment, if the party failed to exercise the option within the twelve-month period, his right thereto is forfeited and he acquires no title to the property so leased other than as lessee.

---

[*]Corpus Juris-Cyc References: Contracts, 13CJ, p. 370, n. 25; Evidence, 22CJ, p. 1098, n. 96; p. 1227, n. 65; Sales, 35Cyc, p. 56, n. 58. On admissibility of parol evidence to vary, add to, or alter a written instrument, see annotation in 17 L. R. A. 272; 10 R. C. L. 1033; 6 R. C. L. Supp. 635.

APPEAL from chancery court of Simpson county. HON. T. P. DALE, Chancellor.

Suit by Arthur Jourdan and another, doing business as the Keyless Lock Company, against R. F. Albritton for rent under a lease contract and for possession of certain post office equipment. From a judgment for defendant, complainants appeal. Reversed and remanded, with directions.

*C. M. Whitworth,* for appellants.

*Hilton & Hilton,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

Appellants were complainants in the court below.
The suit was originally instituted in the circuit court,
but on motion of the defendant it was transferred to the
chancery court. Complainants alleged in their bill that
they were citizens of Indianapolis, Ind., constituting a
partnership, and doing business under the name of the
Keyless Lock Company; that on the 22d day of July,
1921, they entered into a contract with defendant, leas-
ing him certain post office equipment at and for the
sum of one hundred dollars cash, and one hundred dol-
lars payable quarterly, for a period of ten years, or
until the expiration of said lease, to be installed in the
post office building in the town of D'Lo, Mississippi. At
the time of the execution of the contract, the defendant
was given the right, under an ''Option to purchase,'' to
purchase the equipment so leased him, within twelve
months from date of shipment, for the sum of nine hun-
dred two dollars, with interest at eight per cent. from
the date of shipment until the date of such purchase, and,
in case of purchase, the rental paid to that date to be
credited on the purchase price; that on August 30, 1921,
they entered into a second or amended lease in which
certain additions or changes were made in the first lease
by adding a number of boxes, etc., and by increasing the
payments from one hundred dollars to one hundred eight
dollars and forty cents per quarter, and increasing the
total purchase price under the option to one thousand
and ninety-four dollars, with eight per cent. interest, and
with the option to purchase within twelve months from
the date of said lease. It was further alleged that the
equipment was furnished as ordered in accordance with
a blue print of the building, and was installed in said

post office building and used by the defendant, but he did not exercise his option to purchase within twelve months, but continued to pay the quarterly rent, as agreed to in said lease, until such payments equalled one thousand and ninety-four dollars, with eight per cent. interest, whereupon he declined to make any further payments; and that he notified the complainants that he would not pay further, claiming that he had fully paid for the property leased him, and thereupon this suit was brought and judgment prayed for the amount of accumulated rent under the lease contract, and for possession of the post office equipment furnished. The amount claimed to be due as rent at the time of filing the bill on April 1, 1926, was seven hundred fifty-eight dollars and eighty cents. The bill had attached to it as an exhibit the lease contract and the option to purchase attached thereto and forming a part of it. The lease contract recited that:

"The Keyless Lock Company, of Indianapolis, Ind., party of the first part, hereinafter known as the owner, and R. F. Albritton, party of the second part, witnesseth:

"That the said owner, in consideration of the covenants and agreements of the said lessee herein set forth, does, by these presents, lease to the said lessee certain post office equipment, lock boxes, and furniture, as described and enumerated by a certain floor plan and by specifications, a copy of which is attached thereto, all of the said chattels to be used in the post office at D'Lo, state of Mississippi."

In the second paragraph it was provided that Albritton was to hold same from date of installation and to continue during ten years, and that if for any reason the Postmaster General of the United States should cancel the lease between lessee and the United States government, this lease shall be canceled, effective at the same time as the United States government's lease with said lessee, and provided, further, that in case said lease between the United States government and said lessee be

renewed at the end of said five or ten year period, this
contract is to continue in force during said renewal of
lease without change of terms, except that, should the
Post Office Department require additional fixtures, the
Keyless Lock Company agrees to furnish said additions
at a price as low as any price then being made by said
company to any one in the United States. The sum of
one hundred eight dollars and forty cents per quarter in
advance was to be paid, the first payment to be made
on installation of the post office equipment, and same was
paid until the termination of the lease. It was further
stipulated, with reference to the use of the property,
that, in case it became annexed to any building, it was
to preserve its character as a chattel, and there were
other provisions not necessary to state specifically. It
then provided in paragragh 6 that it was expressly un-
derstood and agreed that no verbal agreement could, in
any manner, change or modify any condition of this
lease, and that only the items expressly mentioned
in the specifications attached thereto were to be fur-
nished by the said Keyless Lock Company, at the specific
rate of rental called for above. It was further provided
that the contract was subject to acceptance or rejection
by the home office, and that the contract was signed in
duplicate and was made binding upon the heirs, admin-
istrators, and legal representatives of said parties. It
was signed and witnessed, and was acknowledged before
a notary public by R. F. Albritton. The option to pur-
chase reads as follows:

"It is hereby specifically agreed and understood that
R. F. Albritton, of D'Lo, Miss., has the privilege of pur-
chasing the outfit and equipment specifically described
in the accompanying lease, any time within one year from
date of shipment, for the sum of one thousand and ninety-
four dollars, it being specifically understood that the
principal sum of one thousand and ninety-four dollars
shall bear interest at the rate of eight per cent. from
date of shipment to date of payment of purchase price.

It is further understood that all payments of rent that shall have been made to date of purchase shall apply as a credit against the said principal sum and accrued interest and expenses. This option shall attach to and be made a part of lease contract dated August 26, 1921, between R. F. Albritton, of D'Lo, Miss., and the Keyless Lock Company of Indianapolis, Ind."

The defendant filed an answer and cross-bill, in which he denied entering into the lease, and contends that he purchased the property on quarterly payments, and denied that a legal contract was given him under an "option to purchase" within twelve months.

He admits that a lease, option to purchase, and specifications of equipment are attached to the bill marked "Exhibit A." but denied that he is legally bound thereby, as said contract was wholly and totally procured by fraud upon the part of said complainant through its agents. He admits that he did not pay the full purchase price of one thousand and ninety-four dollars within twelve months after receiving said post office equipment, because, under the terms of the contract, he was not bound so to do; and he denies that the complainant is entitled to the relief prayed for, or to any relief; and then he alleges by way of a cross-bill, and prays that he be permitted to file said cross-bill, charging that he has arranged with the United States government to rent to it a brick building, in D'Lo, Miss.; that he was required to expend about two thousand six hundred dollars, or more, for said building, furnish a safe at an expense of about three hundred seventy-five dollars, desk at about seventy-five dollars, heater at about eight dollars, making a total expense for the building of somewhere about three thousand dollars. In addition to this, under the terms of said contract with the United States government, he charges that he had to provide lights costing two dollars per month, water at fifty cents per month, and fuel at about one dollar and fifty cents per month, and, in addition thereto, was required to equip said building with

post office fixtures, the cost of which was about one thousand dollars. That for this outlay of money, totaling about four thousand dollars, the government agreed to pay Albritton the sum of four hundred dollars per year, or thirty-three dollars and thirty-three cents per month, but from this rent it was necessary to pay for the light, water, and fuel, totaling about four dollars per month, or forty-eight dollars per year, and, in addition thereto, it was also necessary for him to pay as taxes and insurance about one hundred dollars per year, leaving as income on said building about two hundred fifty dollars. He then set up that M. E. Daniel had been the postmaster at D'Lo, and was anxious to procure equipment for said building to make his work easier, and that said Daniel had been, prior to the time of this purchase, postmaster at Puckett, Rankin county, Miss., and had purchased post office equipment from complainant; that said Daniel met a representative of defendant, and such representative or agent explained to defendant, in the presence of Daniel, the method by which he would pay for the equipment; and that such agent assured the defendant that the equipment would be made upon a deferred plan, and it would be necessary to draw a contract showing that the payments for said equipment would be made in installments, and would be so arranged as to become due and payable and in like sum as the amount received by petitioner from the government. That defendant thereupon explained to the representative of complainant that he would receive from the government about one hundred dollars per quarter; that then and there on the 22d day of July, 1921, the defendant signed an agreement, which was represented by the representative of the defendant in the presence of said Daniel, which representation the said Albritton and the said Daniel believed to be nothing more or less than a contract by which payments on the purchase price of said property (nine hundred two dollars) would be made in quarterly payments of one hundred dollars; that he understood that complainant had

retained title to said property until the purchase price of nine hundred two dollars was paid in quarterly installments of one hundred dollars; and that, when the nine hundred two dollars was paid, that the equipment would become the property of the defendant. That, subsequently, it became necessary to buy additional boxes for the post office, which purchase increased the price thereof to one thousand and ninety-four dollars. And that, subsequently thereto, on August 30, 1921, the purchase was made and said defendant executed a contract to cover said additional equipment. It was further alleged that defendant signed both of said contracts without reading them over, and that Daniel, as witness, signed as witness, without reading same over; that the reason defendant and said witnesses did not read same over was because of the full faith and confidence they had in said representatives and the representations that he made to them—that the representations made to them were that it was merely a contract by which the equipment would be paid for in quarterly payments; that he executed this contract, relying upon the statement made by said agent prior to the time of signing said contracts, which representations he believed; that it was a contract to purchase said property on the installment plan by the application of the quarterly rent received from the government until said installments equalled the sum of one thousand and ninety-four dollars, when the property would become the property of the defendant.

The defendant testified in support of his answer and cross-bill that he received the contracts and did not read them over, but signed same without reading them, and placed them in his safe without ever having read then over, and kept them there until he received notice from complainant that he did not avail himself of the right to purchase within the time provided for in said "option to purchase."

The agents of the company testified that there was no such representation made as claimed by defendant, but

that he rented him the post office equipment with the option to purchase, giving him the privilege to pay for same within one year, and, if said option was exercised, to credit the amount paid thereon.

Daniel testified to practically the same facts as Albritton, and on this testimony, the chancellor denied relief to complainant and dismissed the bill of complaint, but sustained the relief prayed for in the cross-bill and declared the post office equipment to be the property of Albritton, from which judgment this appeal is prosecuted.

It will be seen from the foregoing statements that appellee signed and acknowledged the contract in writing, and kept the copy delivered to him in his safe during the entire period of twelve months in which he had the right to purchase, without having read it, but claiming that he was ignorant of its contents, supposing it contained the agreements made verbally between him and the agent.

In vain will contracts be written and governed by their terms as expressed in writing, if defendants, who are able to do so, fail to read them over and are allowed to set up verbal understandings at variance with the written terms of contracts.

It is highly important that contracts reduced to writing be exponents of their own meaning, where the terms are unambiguous. The rule that prohibits the reception of oral evidence to vary the terms of a written contract is necessary to the stability of contracts, and the right to make contracts is so important that it would be calamitous to dispense with this wholesome rule. Under appellee's own testimony, he was grossly negligent in signing a contract without reading it, and especially in accepting it and keeping it in his possession for a whole year and longer without ever taking the precaution to see what it contained. If he had read the contract, he could very easily have availed himself of its provisions.

Parties competent to contract may make their own contracts, and they are the best judges of what is for their best interest in making contracts; and, where they agree upon contracts in writing, where there is plain and unambiguous writing, the courts will not undermine the written contract and overturn rules of law because of any apparent hardship, or for any reason of excessive consideration, in favor of one party against the other, where the parties are able to read and understand their contracts.

The contract as above set out showed that the terms were not to be varied by verbal understandings, and the last contract, which became the final contract, showed that it was to be first approved by the home office before it became binding on the company. Having sent the company a written contract, duly signed, for its approval appellee cannot avail himself of his own negligence in failing to read and understand the contract.

The judgment of the court below will therefore be reversed and judgment rendered here adjudging liability on the contract, and it will be remanded to the court below for determining the amount due according to the terms of the contract, with directions to award a writ of possession for the equipment furnished the appellee by the appellant.

*Reversed and remanded.*